IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARKEL INTERNATIONAL INSURANCE COMPANY LIMITED, Plaintiff<br><br>vs.<br><br>URBAN, LLC d/b/a REBAR, RIVER CITY VENTURES, INC. d/b/a REVOLUTION ROOM, CAROL THOMPSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF SARAH THOMPSON, Defendants | CIVIL ACTION NO. SA08CA0160 OG |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S
### MOTION FOR FINAL SUMMARY JUDGMENT

**TO THE HONORABLE JUDGE OF THIS COURT:**

Defendants Carol Thompson, individually and on behalf of the Estate of Sarah Thompson (collectively, the "Thompsons"), file this Response to Plaintiff's Motion for Final Summary Judgment and would respectfully show the Court as follows:

1.  **Introduction**

The Thompsons[1] sued Defendants Urban LLC, d/b/a Rebar, and River City Ventures, Inc. d/b/a Revolution Room (collectively, the "Bars") in Texas state court asserting premises liability claims and alleging the Bars were negligent and liable for the death of Sarah Thompson. Subsequently, the Bars requested that their insurer, Plaintiff Markel International Insurance Company Limited ("Markel"), defend them against the Thompsons' claims. Markel declined to do so. Markel contends the Bars' insurance policies exclude coverage for the Thompsons' claims. Based on this contention, Markel insists it has no duty to defend the Bars and is entitled

---

[1] Ted Thompson died and the petition was amended to assert claims by Carol Thompson individually and on behalf of the Estate of Sarah Thompson, deceased.

30950                                    1

to summary-judgment as a matter of law. Specifically, Markel avers the underlying claims against the Bars are excluded from coverage because: (1) the insurance policies exclude all claims for "bodily injury" arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use, or entrustment to others of an automobile; (2) the Texas Dram Shop Act is the Thompsons' exclusive remedy; and, (3) the policies do not provide coverage for incidents occurring in a public street. Markel is mistaken.

As will be discussed in more detail below, Markel has a duty to defend the Bars, its insureds, if the factual allegations set forth in the Thompsons' state court suit, when taken as true, potentially state a claim within the terms of the policy. *See Samsung Elecs. Am., Inc. v. Federal Ins. Co.*, 202 S.W.3d 372, 376 (Tex. App.—Dallas 2006), *aff'd by Federal Ins. Co. v. Samsung Elecs. Am.*, --- S.W.3d ----, 2008 WL 3991183 (2008). Markel, however, fails to specifically address whether the Thompsons' state law premises liability claims are excluded from coverage. Instead, Markel provides a woefully incomplete version of the facts in support of its argument it has no duty to defend its insureds. With regard to their premises liability claims against the Bars, the Thompsons' state court petition alleges as follows:

- On or about September 8, 2005, Sarah Thompson, was struck and killed by a vehicle operated by Jose Carlo Vara. The incident occurred in the 8100 block of Broadway in San Antonio, Texas.

- On the night of the tragedy, Sarah Thompson was leaving Rebar to visit two other bars across the street, Revolution Room and Karma. Friends of hers from law school had gone to the bars enticed by drink specials and different bands at each bar.

- Sarah had almost walked across all four lanes of Broadway when she was fatally struck.

- Sarah Thompson was an invitee and/or licensee of Rebar, Revolution Room and Karma which are situated on either side of a busy thoroughfare, Broadway.

- Sarah Thompson was a member of the public who was invited to enter the premises for the purpose for which it was held open to the public. These bars invited the public to enter for their pecuniary benefit, and patrons regularly attended more than one of these bars in an evening.

30950                  2

- Rebar, Revolution Room, and Karma knew of an unsafe condition caused by the location of these bars, and lack of adequate and safe parking.

- The lack of adequate and safe parking meant patrons would need to park on side streets or wherever they were able and walk back and forth between bars rather than moving their cars. The inadequate parking thus created additional pedestrian traffic at a location where there was no cross walk or street light.

- Rebar, Revolution Room, and Karma knew of a likelihood of personal injury due to inadequate parking.

- Rebar, Revolution Room, and Karma knew that Broadway—the street on which the accident occurred—was a dangerous thoroughfare for pedestrians and had actual knowledge of prior accidents involving pedestrians, drivers, and bar patrons.

- Rebar, Revolution Room, and Karma failed to provide security, a cross walk, or any means of ensuring the safety of patrons who must cross the street to enter the bar.

- Rebar, Revolution Room, and Karma created an unsafe condition by failing to provide for adequate parking adjacent to each bar, and a safe means by which patrons could cross the busy street to enter the various bars.

- It was foreseeable that patrons of these bars might suffer personal injury by motorists while trying to cross the street or trying to enter the premises from off-site parking. It was foreseeable that patrons crossing the street to get to their vehicles or parking in remote areas would be in danger from criminal activity.

*See* Plaintiffs' Fifth Amended Original Petition filed in *Carol Thompson, Individually and on Behalf of the Estate Sarah Thompson v. Jose Carlo Vara, et al.*, currently pending in the 225th Judicial District Court of Bexar County, Texas.[2] These facts, when taken as true, support the existence of a duty owed by the Bars to (a) use ordinary care to protect Sarah Thompson, as an invitee, from criminal acts of third-parties; (b) either warn Sarah Thompson, as a licensee, of the unsafe conditions on the Bars' premises or make the conditions reasonably safe; or (c) use reasonable care not to jeopardize or endanger the safety of persons, such as Sarah Thompson, using the roadway which abuts their property. The Thompsons contend the Bars' violations of one or more of these duties proximately caused bodily injury and death to Sarah Thompson.

---

[2] The Thompsons' underlying state court petition is attached to this response as Exhibit A for the Court's convenience. Further, the petition will be referred to as the "State Court Petition."

30950　　　　　　　　　　　　　　　　3

Premises liability claims such as these are covered under the insurance policies at issue in this case. Because the Thompsons' underlying state law claims are covered by the policies, Markel has a duty to defend the Bars. Consequently, the Court should deny Markel's motion for summary judgment.

2. **Standard of Review**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

3. **Texas Insurance Law & the Duty to Defend**

An insurer's duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a claim within the terms of the policy. *Samsung Elecs. Am., Inc. v. Federal Ins. Co.*, 202 S.W.3d 372, 376 (Tex. App.—Dallas 2006), *aff'd by Federal Ins. Co. v. Samsung Elecs. Am.*, --- S.W.3d ----, 2008 WL 3991183 (2008). The duty to defend is determined by the allegations in the pleadings and the language of the insurance policy. *Id.*; *see also National Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). This standard is known as the "eight-corners rule" or the complaint-allegation rule. The eight-corners rule provides "an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or

30950             4

falsity of those allegations." *Zurich American Ins. Co., et al. v. Nokia, Inc.*, --- S.W.3d ----, 2008 WL 3991183, *2 (Tex. 2008) (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)). Thus, "[e]ven if the allegations are groundless, false, or fraudulent the insurer is obligated to defend." *Id.* (quoting 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 200:19 (3rd ed. 2007)).

When applying the eight corners rule, courts are to give the allegations in the underlying lawsuit a liberal interpretation in favor of the insured. *Samsung Elecs. Am., Inc.*, 202 S.W.3d at 376; *see also Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008) ("Allegations are read liberally in favor of the insured."). Courts presume the facts alleged in the underlying lawsuit are true when gauging the insurer's duty to defend. *Samsung Elecs. Am., Inc.*, 202 S.W.3d at 376 (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965)). All doubts regarding the duty to defend are resolved in favor of the duty. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002); *see also Noble Energy, Inc., et al. v. Bituminous Casualty Co.*, 529 F.3d 642, 646 (5th Cir. 2008). A plaintiff's factual allegation that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend. *GuideOne Elite Ins. Co.*, 197 S.W.3d at 310. Moreover, if a complaint potentially includes a covered claim, the insurer must defend the entire suit. *Zurich American Ins. Co.*, 2008 WL 3991183 at *2. The duty to defend is not negated by the inclusion of claims that are not covered; rather, it is triggered by the inclusion of claims that might be covered. *Id.* at *7. Thus, it is possible an insurer may have a duty to defend but, eventually, no obligation to indemnify. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997). The insured party bears the initial burden of showing there is coverage, while the insurer bears the burden of showing that any exclusion in the policy applies. *Noble Energy, Inc., et al.*, 529 F.3d at 646.

Insurance policies are written contracts, and, as with other contracts, courts interpret and enforce them according to settled rules of construction. *National Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008). If a policy's language can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and should be construed as a matter of law. *Texas Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 126 (Tex. 2004). Whether a contract is ambiguous is itself a question of law. *Id.* An ambiguity does not arise simply because the parties offer conflicting interpretations of the policy language. *Id.* Rather, an ambiguity exists only if the contract is susceptible to two or more reasonable interpretations. *Id.*

## 4. Argument

There is no dispute Markel provided insurance coverage for the Bar for premises liability. Markel contends, however, the Thompsons' state law claims against the Bars are excluded from coverage under the policies at issue in this case. The exclusions noted by Markel in its motion for summary judgment are not applicable to the premises liability claims asserted by the Thompsons. Moreover, the Thompsons' State Court Petition alleges facts that, when taken as true, potentially state claims that are covered under the policies. Accordingly, Markel has failed to carry its burden of demonstrating the Thompsons' claims are excluded and, as a result, has not established as a matter of law, it has no duty to defend its insureds. Thus, this Court should deny Markel's motion for summary judgment because Markel has not proven it is entitled to judgment as a matter of law.

### a. The policies' automobile exclusion is not applicable.

The automobile exclusion included in the Bars' policies provides: "This insurance does not apply to 'bodily injury' or 'property damage' arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any 'auto.'" *See* Policy Number RAM08188 issued to Urban, LLC d/b/a Rebar (hereinafter, "Urban Policy") at

MKL 01 Endorsement ¶ r; *see also* Policy Number RAM08663 issued to River City Ventures, Inc. d/b/a Revolution Room (hereinafter, "River City Ventures Policy) at MKL 01 Endorsement ¶ r.[3] Markel argues the Thompsons' "suit is one for bodily injury arising out of the use of an auto," and the policies exclude coverage for such claims, so "there simply is no coverage for Urban and [River City Ventures] and no duty for Markel to defend either in light of this exclusion." Markel's argument, however, simply ignores the fact the Thompsons have alleged more than one theory regarding the proximate cause of the death of Sarah thompson. *See Lee Lewis Constr. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001) (acknowledging under Texas law, "[m]ore than one act may be the proximate cause of the same injury").

Furthermore, the Thompsons' premises liability claims *against the Bars* do not allege their daughter's injuries arose out of or were caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of an automobile. Instead, the Thompsons' claims allege the Bars' failed to provide adequate parking next to each bar as well as a safe means by which patrons could cross the street to enter the bars despite having knowledge of these dangerous conditions on their premises. These failures by the Bars proximately caused bodily injury and death to Sarah Thompson. *See* State Court Petition at ¶¶ 21-22. Thus, the automobile exclusion is inapplicable to these claims.

### b. The Texas Dram Shop Act does not preempt the Thompsons' common law premises liability claims.

Markel notes the policies' "Liquor Liability Exclusion" excludes coverage for "bodily injury" "arising out of: (1) causing or contributing to the intoxication of any person; and/or . . . (4) . . . providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any

---

[3] The Bars' insurance policies are attached to this response for the Court's convenience. The Urban Policy is attached as Exhibit B and the River City Ventures Policy is attached as Exhibit C.

person allegedly under or suspected to be under the influence of alcohol." *See* Urban Policy at MKL Endorsement ¶ w; *see also* River City Ventures Policy at MKL Endorsement at ¶ w. Markel further avers the only remedy the Thompsons have against the Bars is a claim under the Dram Shop Act. Thus, Markel concludes that because the policies exclude coverage for the only cause of action allowed under Texas law, which it contends is a Dram Shop claim, it has no duty to defend the Bars and is entitled to summary judgment as a matter of law. Again, Markel's position as to the applicability of this exclusion is based on an inaccurate portrayal of the claims made against its insureds. Moreover, Markel's conclusion that the Dram Shop Act is the Thompsons' exclusive remedy is incorrect.

"The [Texas] Legislature enacted the Dram Shop Act to 'deter providers of alcoholic beverages from serving alcoholic beverages to obviously intoxicated individuals who may potentially inflict serious injury on themselves and on innocent members of the general public.'" *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007) (quoting *Smith v. Sewell*, 858 S.W.2d 350, 356 (Tex. 1993)). The Dram Shop Act imposes liability on alcoholic beverage providers for damages proximately caused by the intoxication of individuals who were served despite being obviously drunk. *20801, Inc. v. Parker*, 249 S.W.3d 302, 395 (Tex. 2008); *F.F.P. Operating Partners, L.P.*, 237 S.W.3d at 684 ("In the Dram Shop Act, the Legislature created a duty, not recognized at common law, on alcohol providers and increased the potential liability of providers as a means of deterring providers from serving obviously intoxicated individuals."). Thus, under the Dram Shop Act, "*[p]roviding, selling, or serving an alcoholic beverage* may be made the basis of a statutory cause of action ... upon proof that (1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and (2) the intoxication of the recipient of the alcoholic

beverage was a proximate cause of the damages suffered." Tex. Alco. Bev. Code Ann. § 2.02(b) (emphasis added). By its own terms, the Dram Shop Act applies to those situations where a "provider" sells, serves, or provides an alcoholic beverage to an individual.[4] *Id.; see also Moore,* 903 S.W.2d at 903.

Markel would have this Court believe that the Dram Shop Act's exclusivity provision bars all common-law causes of action against commercial sellers of alcohol for any conduct that in some way involves alcohol. The Texas Supreme Court, however, has specifically rejected that argument. In *D. Houston, Inc. v. Love, supra,* the Court concluded that although the "Dram Shop Act was clearly intended to pre-empt common law claims against commercial sellers of alcohol for claims that arise from the sellers' provision of alcohol," the Act does not preempt a common-law claim against a person[5] who is licensed or permitted to provide, sell, or serve alcohol if the person is not being sued as a "provider" of alcohol. The Court's holding in *D. Houston, Inc.,* is bolstered by the plain language of the exclusivity provision. Section 2.03(c) of the Dram Shop Act states that "[t]his chapter provides the exclusive cause of action *for providing an alcoholic beverage to a person 18 years of age or older.*" Tex. Alco. Bev. Code Ann. § 2.03(c) (emphasis added). Moreover, the chapter of the Texas Alcoholic Beverage Code in which the exclusivity provision is found is entitled "Civil Liabilities for Serving Beverages." Therefore, the exclusivity provision does not apply if the cause of action is not predicated on "providing an alcoholic beverage to a person 18 years of age or older."

The Dram Shop Act does not preempt the Thompsons' common law premises liability claims. These claims are not based on the Bars' provision of alcohol in any fashion. Rather, the Thompsons' claims are predicated on the Bars' failure to properly maintain and remediate

---

[4] The term "provider" is statutorily defined to mean a person who sells or serves an alcoholic beverage under authority of a license or permit issued under the terms of the Code or who otherwise sells an alcoholic beverage to an individual. Tex. Alco. Bev. Code Ann. § 2.01(1).
[5] The term "person" means a natural person or association of natural persons, trustee, receiver, partnership, corporation, organization, or the manager, agent, servant, or employee of any of them. *Id.* § 1.04(6).

dangerous conditions on their premises that were known or reasonably foreseeable. The Thompsons' contend the Bars' breach of duties owed to Sarah Thompson proximately resulted in her death. The Thompsons' claims do not involve the provision, sale, or service of alcohol. Moreover, the Thompsons' claims against the Bars are not based on any bodily injuries suffered by their daughter as a result of the Bars' provision of alcohol or the Bars' failure to assume responsibility for the well being of any person suspected to be under the influence of alcohol. Accordingly, the Dram Shop Act does not apply and does not preempt their premises liability claims. Similarly, the policies' Liquor Liability Exclusion does not apply to the Thompsons' claims against the Bars. Markel is not entitled to summary judgment.

     **c.    The Thompsons' claims against the Bars are not excluded from coverage under the policies simply because Sarah Thompson was struck and killed by an automobile while she was crossing a public street.**

The Bars' policies provide that the "insurance applies only to locations and operations that are described on the Declarations page or Extension of Declarations of this policy. If any operation(s) and/or location(s) are not described, they are not covered hereunder." *See* Urban Policy at MKL Endorsement ¶ a; *see also* River City Ventures Policy at MKL Endorsement at ¶ a. Markel correctly notes that on both policies the operations and locations described on the Declarations page include the addresses of the Bars and the fact that the Bars are "taverns." Markel relies on this fact to argue the Thompsons' claims against the Bars are excluded because the accident in which Sarah Thompson was struck and killed occurred in the public street rather than on the premises described in the policies. However, the flaw in Markel's argument is that it improperly conflates the location of the accident with the location of the underlying negligence. The Thompsons' premises liability claims against the Bars concern dangerous conditions located on the Bars' premises as described in the policies. Specifically, the Thompsons' allege these dangerous conditions were known or reasonably foreseeable and the Bars' breach of their duties

to remediate the dangerous conditions or to warn of their existence was the proximate cause of Sarah Thompson's injuries and death. Thus, the fact Sarah Thompson was not struck on the Bars' premises is immaterial because Plaintiffs allege the Bars' premises as described in policy was the proximate cause of the injuries. Accordingly, this exclusion does not apply. As a matter of law, summary judgment is not appropriate.

> **d.    Any exclusion of coverage relating to punitive damages and any applicable policy limits included in the Bars' policies are not applicable to and have no bearing on Markel's duty to defend the Bars.**

Markel asserts the Bars' policies contain an endorsement specifically excluding coverage for punitive damages. Whether or not this is true it is immaterial to the larger issue of Markel's duty to defend the Bars. The Thompsons seek both compensatory and punitive damages in their state court suit. Thus, even if the punitive damage exclusion limits ultimate liability by Markel, it does not eliminate Markel's duty to defend the Bars. Similarly, the possibility that Markel's duty to indemnify its insureds under the policy may be capped at $500,000 has no bearing on Markel's duty to defend the Bars. Summary Judgment for Markel should be DENIED.

## 5. Conclusion & Prayer

The Bars' policies do not expressly exclude coverage for premises liability claims such as those asserted by the Thompsons in Texas state court. Furthermore, when all doubts are resolved in favor of a duty to defend and all of the facts alleged in the Thompsons' State Court Petition are accepted as true, it becomes clear that the Thompsons have alleged facts that potentially support a covered claim. Markel, however, has failed to demonstrate the Thompsons' state law claims against the Bars are excluded from coverage under the policies. As a result, Markel has not met its summary-judgment burden of establishing its right to judgment as a matter of law.

WHEREFORE, PREMISES CONSIDERED, Ted and Carol Thompson, individually and on behalf of the Estate of Sarah Thompson, requests the Court deny Markel's motion for

summary judgment, declare that Markel has a duty to defend the Bars, and for all such other relief to which they may be entitled.

Respectfully submitted,

**CLARK, THOMAS & WINTERS**
A Professional Corporation
2632 Broadway, 401 S.
San Antonio, Texas 78215
(210) 582-0220 (Telephone)
(210) 582-0231 (Facsimile)

By: _____
Lori W. Hanson
State Bar No. 21128500

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of November 2008, the above pleading was served on the following counsel of record in accordance with the Texas Rules of Civil Procedure:

Mark R. Strandmo
BROCK PERSON GUERRA REYNA
1506 Bexar Crossing
San Antonio, Texas 78232-1587
Counsel for Jose Carlo Vara, Jr. and Jose J. Vara

John J. Rivas
R. Jaime Treviño
Rivas Goldstein, LLP
1601 East 5th Street, Suite 101
Austin, Texas 78701
Counsel for Gonzaba Autoplex, GP, LLC dba Gonzaba Autoplex

Earle E. Cobb, Jr.
LAW OFFICE OF EARLE E. COBB, JR.
101 Stumberg
San Antonio, TX 78204
Counsel for River City Ventures, Inc. dba Revolution Room & Urban LLC, dba Rebar

George G. Brin
Richard J. Kasson
BRIN & BRIN, PC
10999 I H 10 West, Suite 800
San Antonio, TX 78230
Counsel for I-Carma and General Partner Bad Monkey Entertainment, LLC dba Karma

_____
Lori W. Hanson